IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | NO. 1:19-cr-00003-1 |
| v. | ) | |
| | ) | JUDGE CAMPBELL |
| JAMAL J. GARDNER | ) | |

## MEMORANDUM

At the sentencing hearing held April 7, 2025, the Court found Defendant Jamal J. Gardner had been convicted of three prior serious drug offenses and was therefore subject to enhanced penalties under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). (Doc. Nos. 142, 143, 144). The reasons for this determination were stated on the record during the hearing. Defendant has filed a notice of appeal. (Doc. No. 145). For clarity of the record, the Court issues this memorandum concerning the ACCA determination. The Court's other sentencing findings, including relevant conduct and consideration of the Section 3553(a) factors were stated on the record and are not repeated herein.

### I. BACKGROUND

At the conclusion of a four-day trail, a jury found Defendant Jamal J. Gardner guilty of possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924. (*See* Doc. No. 103). The jury also found that Defendant committed the following offenses on occasions different from one another:[1]

    1. The conviction for sale of .5 grams or more of cocaine in violation of Tenn. Code

---

[1] The jury finding was limited to whether the offenses were committed on occasions different from one another. The specific information regarding each offense is from the *Shepard* documents presented at trial and sentencing. (Gov't Ex. 155 and Doc. No. 135-1).

Ann. § 39-17-417, a class B felony, in *State of Tennessee v. Jamal J. Gardner*, Case Number 9102, in the Maury County, Tennessee, Criminal/Circuit Court entered on or about July 10, 1996.

2. The conviction for possession with intent to sell cocaine in violation of Tenn. Code Ann. § 39-17-417, a class B felony, in *State of Tennessee v. Jamal J. Gardner*, Case Number 10594, in the Maury County, Tennessee, Criminal/Circuit Court entered on or about June 23, 1998.

3. The conviction for sale of over .5 grams of cocaine within 1000 feet of a daycare in violation of Tenn. Code Ann. § 39-17-432, a class B felony, in *State of Tennessee v. Jamal J. Gardner*, Case Number 20915, in the Maury County, Tennessee, Criminal/Circuit Court entered on or about March 26, 2012.

(*Id.*; Doc. No. 135-1).

## II.   ANALYSIS

At issue is whether Defendant is subject to an enhanced sentence under the ACCA, 18 U.S.C. § 924(e). The ACCA provides for enhanced sentencing for a person convicted of a violation of 18 U.S.C. § 924(g) who has "three previous felony convictions" for a violent felony or "a serious drug offense" that were "committed on occasions different from one another." 18 U.S.C. § 924(e).

Defendant argues that he is not subject to enhanced sentencing under the ACCA because his Tennessee convictions for sale and possession with intent to sell cocaine are not "serious drug offenses" because the Tennessee definition of "cocaine" is broader than the federal definition of cocaine.

Under the ACCA, a "'serious drug offense' means … an offense under State law, involving … distributing … a controlled substance (as defined in Section 102 of the Controlled Substances

2

Act (21 U.S.C. § 802), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). At issue is whether Defendant's convictions for sale and delivery of cocaine are "offense[s] under State law" involving "a controlled substance (as defined in Section 102 of the Controlled Substances Act)."

The Controlled Substances Act ("CSA") defines a "controlled substance" as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter." 21 U.S.C. § 802(6). Section 812 provides the schedules of controlled substances. 21 U.S.C. § 812(a) ("There are established five schedules of controlled substances, to be known as schedules I, II, III, IV, and V. Such schedules shall initially consist of the substances listed in this section."). "Cocaine" in listed in schedule II(a)(4) as follows:

> coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed; cocaine, its salts, optical and geometric isomers, and salts of isomers; ecgonine, its derivatives, their salts, isomers, and salts of isomers; or any compound, mixture, or preparation which contains any quantity of any of the substances referred to in this paragraph.

21 U.S.C. § 812, Schedule II (a)(4). "Isomer" is defined to mean "any optical or geometric isomer." 21 U.S.C. § 802(14).

Defendant's controlled substance convictions are under Tenn. Code Ann. § 39-17-417, which makes it an offense to manufacture, deliver, sell, or possess with intent to sell, manufacture, or deliver a controlled substance. Tennessee defines "controlled substance" as "a drug, substance, or immediate precursor in Schedules I through VII." Tenn. Code Ann. § 39-17-402(4). Like its federal counterpart, Tennessee lists cocaine in schedule II:

> Coca leaves and any salt, compound, derivative, or preparation of coca leaves (including cocaine and ecgonine and their salts, isomers, derivatives, and salts of isomers and derivatives), and any salt, compound, derivative, or preparation thereof that is chemically equivalent or identical with any of these

3

substances, except that the substances shall not include decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine;

*See* Tenn. Code Ann. § 39-17-408(b)(4). Unlike the federal counterpart, Tennessee does not define "isomer."

Defendant's argument is grounded in this distinction. He argues that the Tennessee schedule "defines" cocaine, and that the Tennessee "definition" includes all cocaine isomers, including positional cocaine isomers, not included in the federal listing.[2] Defendant argues that because "Tennessee's definition of cocaine (which includes cocaine and all of its isomers) is categorically broader than the federal one (which includes cocaine and only its stereoisomers)," a conviction for selling cocaine under Tenn. Code Ann. § 39-17-417 is not a "serious drug offense" within the meaning of the ACCA. (Doc. No. 132 at 3).

The Government argues that it does not matter if the Tennessee list of controlled substances sweeps more broadly than the federal schedule by criminalizing positional isomers of cocaine because the Tennessee statute is divisible and the *Shepard* documents clearly show that Defendant's convictions involve "cocaine."

"Where the statute of conviction is 'divisible,' meaning it lists elements in the alternative such that the statute 'comprises multiple, alternative versions of the crime,' the court uses the 'modified categorical approach.'" *United States v. Wilkes*, 78 F.4th 272, 277 (6th Cir. 2024) (quoting *United States v. House*, 872 F.3d 748, 753 (6th Cir. 2017)). Under this approach, the Court consults a limited class of documents to determine which alternative formed the basis of the

---

[2] Defendant did not provide the Court with any scientific opinions or explanation to differentiate various types of "isomers."

4

defendant's prior conviction. *Id*. These documents, known as *Shepard* documents, include the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented" to determine whether the underlying conviction falls with the definition of the crime as set forth in the ACCA. *United States v. Goldston*, 906 F.3d 390, 393-94 (6th Cir. 2018).

The Sixth Circuit has found that Tennessee controlled substances statute, Tenn Code Ann. § 39-17-417, is divisible because it contains multiple alternative elements. *See e.g. Goldston*, 906 F.3d at 393-94. Like many states, Tennessee treats the specific controlled substances as an element of the offense. *See State v. Walker*, 29 S.W.3d 885, 892 (Tenn Crim. Ct. App. 1999); *see also* Tenn. Pattern Jury Instructions – Criminal 39.01.

Here the *Shepard* documents show that Defendant was convicted of controlled substance offenses involving "cocaine" that were categorized as "Class B" felonies. (*See* Doc. No. 135-1). Cocaine is listed on both the Tennessee and federal schedules, so there is no categorial mismatch. The inquiry could end there. But Defendant argues that "cocaine" means more than just "cocaine" because the Tennessee schedule is not merely a list of controlled substances – it *defines* "cocaine." And the federal schedule is also not just a list of controlled substances – it also *defines* "cocaine." And so, when the Court, under the modified categorical approach, determines that Defendant's underlying convictions are for "cocaine," that is not the end of the inquiry because "cocaine" is defined different under the CSA and Tennessee law. Defendant points to cases in other circuits concerning the statutes of other states that agree with this argument. *See United States v. Owen*, 51 F.4th 292 (8th Cir. 2022) (Minnesota law); *United States v. Ruth*, 966 F.3d 642 (7th Cir. 2020) (Illinois law); *United States v. Phifer*, 909 F.3d 372, 376 (11th Cir. 2018) (Florida law). To the extent these decisions consider the Schedule II listing a "definition of cocaine," the Court

5

respectfully disagrees with that conclusion.[3]

As an initial matter, the plain language of the Tennessee controlled substances schedule states that it is a list. *See* Tenn. Code Ann. 39-17-408) ("Schedule II consists of the drugs and other substances, by whatever official name, common or usual name, chemical name, or brand name designated, *listed* in this section.") (emphasis added). Moreover, the Tennessee statute has a list of "definitions," *see* Tenn. Code Ann. § 39-17-402, which contains definitions of certain controlled substances, including definitions for marijuana, opiate, opium poppy, poppy stray, and "immediate methamphetamine precursor." *See id*. at §§ 402(13), (16), (18), (19), (22). Thus, it is clear that when the Tennessee legislature intends to define a particular controlled substance, it does so.

Next, the wording subsection of Schedule II that includes "cocaine," confirms that subsection (b)(4) is not a "definition" of cocaine. Instead, this subsection lists controlled substances that derive from coca leaves, "including cocaine and ecgonine and their salts, isomers, derivatives, and salts of isomers and derivatives." Tenn. Code Ann. § 39-17-408(b)(4). If subsection (b)(4) is a definition of "cocaine," as Defendant argues, it would define "cocaine" as "including cocaine," which plainly makes no sense. Instead, "cocaine" is merely one of a number of controlled substances related to coca leaves, which includes cocaine salts, cocaine isomers, cocaine derivatives, and the salts of cocaine isomers and derivatives.

---

3   The Court notes that the Minnesota statute at issue in *United States v. Owen*, 51 F.4th 292 (8th Cir. 2022), defines "cocaine" in a separate definitions section. *See* Minn. Stat. Ann. § 152.01, Subd. 3a (defining cocaine).

*United States v. Phifer*, 909 F.3d 372 (11th Cir. 2018), did not involve cocaine. In that case, the defendant was convicted of possession with intent to distribute ethylone and argued that the conviction was invalid because ethylone is not a "positional isomer" of butylone. The Court remanded for the district court to determine the definition of positional isomer within the scientific community.

6

Case 1:19-cr-00003    Document 148    Filed 04/23/25    Page 6 of 8 PageID #: 1481

This is consistent with the parts of the controlled substances statute setting offense levels for particular substances. *See* Tenn. Code Ann. § 39-17-417(c)(1) and (2). Under these provisions, a violation involving "cocaine" and other specified controlled substances is a Class B felony if the amount is 0.5 grams or more. Violations involving "cocaine" or other specified controlled substances in an amount less than 0.5 grams and violations involving "[a]ny other Schedule II controlled substance," is a Class C felony. This section of the statute makes no reference to cocaine isomers or salts, leading the Court to conclude that "cocaine" means "cocaine" and charges involving cocaine isomers of any variety fall within the catch-all for "[a]ny other Schedule II controlled substance."

The statute's treatment of other substances shows that when the legislature intended to include isomers, it so specified by accounting for "isomers" and "salts" separately from the named substance. For example, Schedule II(d)(2) lists "Methamphetamine, its salts, isomers, and salts of its isomers." Tenn. Code Ann. § 39-17-408. This is comparable to the listing applicable here – Schedule II(b)(4) includes "cocaine and ecgonine and their salts, isomers, derivatives, and salts of isomers and derivatives." *Id*. In setting the offense classification, cocaine and methamphetamine are treated the same and are referred to simply as "cocaine" and "methamphetamine," without any provision for isomers. *See* Tenn. Code Ann. § 39-17-417 (c)(1), (2). Subsection 417(j), however, sets a separate offense classification for "any substance containing … methamphetamine or any salt of an optical isomer of … methamphetamine." Tenn. Code Ann. § 39-17-417(j)(10). The same subsection includes additional penalties for quantities of "any substance containing cocaine" without specific mention of isomers or salts. *See* Tenn. Code Ann. § 39-17-417(j)(5). By its plain language, by providing specific penalties for "any substance containing [] methamphetamine *or* any salt of an optical isomer of [] methamphetamine," subsection j(10) distinguishes between

7

methamphetamine and isomers of methamphetamine.[4] In other words, methamphetamine does not automatically include isomers of methamphetamine, otherwise there would be no need to separately provide for isomers of methamphetamine.

This shows that the legislature intended to treat methamphetamine and isomers of methamphetamine differently. Given the similarities in the listings of "cocaine" and "methamphetamine," the Court finds no reason to construe Schedule II(b)(4) as "defining" "cocaine" to include each substance listed in that subsection. If the legislature intended to set penalties for "isomers" it knew how to do so. But when the legislature intended to set penalties for "cocaine," it meant "cocaine."

### III. CONCLUSION

Because "cocaine" means "cocaine," and the *Shepard* documents show that Defendant's offense convictions are for "cocaine," the Court's inquiry is at an end. Defendant's controlled substance offenses qualify as serious drug offenses under the ACCA.

Judgment consistent with this opinion has entered. (*See* Doc. No. 143).

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE

---

[4] The same subsection includes additional penalties for quantities of "any substance containing cocaine" without specific mention of isomers or salts of cocaine. *See* Tenn. Code Ann. § 39-17-417(j)(5).